UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| IEASHA DOTSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:17-cv-31 |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Ieasha Dotson, on April 20, 2017. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Ieasha Dotson, filed applications for Disability Insurance Benefits and Supplemental Security Income on August 13, 2013, alleging a disability onset date of August 1, 2013. (Tr. 52). The Disability Determination Bureau denied Dotson's applications on December 11, 2013, and again upon reconsideration on July 7, 2014. (Tr. 52). Dotson subsequently filed a timely request for a hearing on August 22, 2014. (Tr. 52). A hearing was held on January 27, 2016, before Administrative Law Judge (ALJ) Laurie Wardell, and the ALJ issued an unfavorable decision on February 12, 2016. (Tr. 52-62). Vocational Expert (VE) Richard J. Hamersma testified at the hearing. (Tr. 52). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

Dotson met the insured status requirements of the Social Security Act through December 31, 2017. (Tr. 54). The ALJ issued an unfavorable decision on February 12, 2016, and made findings as to each of the steps in the five-step sequential analysis. (Tr. 52-62). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Dotson had not engaged in substantial gainful activity since August 1, 2013, the alleged onset date. (Tr. 54).

At step two, the ALJ determined that Dotson had the following severe impairments: scoliosis, posttraumatic stress disorder, and bipolar disorder. (Tr. 54). At step three, the ALJ concluded that Dotson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 55). The ALJ indicated that she considered the listings in section 1.00 for musculoskeletal disorders and section 12.00 for mental health disorders. (Tr. 55). However, regarding Dotson's scoliosis, the ALJ considered Listing 1.04 but indicated that she did not find evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with ineffective ambulation in the medical record. (Tr. 55). The ALJ also considered Dotson's mental impairments, singly and in combination, according to the criteria in Listings 12.04 and 12.06. (Tr. 55). Accordingly, the ALJ determined that the severity of Dotson's mental impairments did not meet or medically equal the listings. (Tr. 55).

In finding that Dotson did not meet the above listings, the ALJ considered the paragraph B criteria for mental impairments, which required at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 55). The ALJ defined a marked limitation as more than moderate but less than extreme and repeated episodes of decompensation, each of extended duration, as three episodes within one year or once every four months with each episode lasting at least two weeks. (Tr. 55).

The ALJ determined that Dotson had mild restriction in activities of daily living. (Tr. 55). The ALJ noted that the function reports completed by Dotson in September of 2013 and June of 2014 indicated that she was able to complete similar activities daily living. (Tr. 55). The ALJ noted that Dotson was able to care for her children, help her children with homework, prepare meals, clean, use public transportation, manage finances, shop, and visit with family. (Tr. 55).

Next, the ALJ concluded that Dotson had moderate difficulties in social functioning. (Tr. 55). Dotson indicated that she had extreme issues with social interaction. (Tr. 56). However, the ALJ accounted for Dotson's testimony that she lived with her two children, used public transportation, spent an hour at a time on Facebook, and shopped in stores. (Tr. 56). Therefore, ALJ found that those activities demonstrated that Dotson was able to interact with others. (Tr. 56).

Finally, the ALJ found that Dotson had moderate difficulties in concentration, persistence, or pace. (Tr. 56). The ALJ noted that Dotson's activities of daily living demonstrated that she was able to maintain attention and concentration. (Tr. 56). The ALJ found that Dotson had no episodes of decompensation which were of extended duration. (Tr. 56). Because Dotson did not have two marked limitations or one marked limitation and repeated episodes of decompensation, the ALJ determined that she did not satisfy the paragraph B criteria. (Tr. 56). Additionally, the ALJ concluded that Dotson did not satisfy the paragraph C criteria. (Tr. 56).

After consideration of the entire record, the ALJ then assessed Dotson's residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity (RFC) to perform light work as defined in 404.1567(b) and 416.967(b) as lifting/carrying 20 pounds occasionally and 10 pounds frequently, standing/walking about six of eight hours, and sitting about six or eight hours. The claimant also has the following additional limitations: occasional stooping, couching, and climbing ramps and stairs, but no climbing ladders, ropes or scaffolds; no kneeling or crawling; simple, routine, and repetitive tasks not at production rate pace; occasional conduct [sic] with coworkers and supervisors; no tandem tasks and no work with the public; simple work decisions; only occasional changes in the work setting.

(Tr. 57). The ALJ explained that in considering Dotson's symptoms she followed a two-step process. (Tr. 57). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Dotson's pain or other symptoms. (Tr. 57). Then, she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Dotson's functioning. (Tr. 57).

The ALJ indicated that after consideration of the evidence, she found that Dotson's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible with the evidence as a whole, including the medical evidence and her noted activities of daily living, did not support the allegations. (Tr. 59). The ALJ found that Dotson's type of treatment was conservative considering her alleged degree of pain and limitations. (Tr. 60). Also, the ALJ considered that Dotson's ability to work demonstrated that she was capable of more than she alleged. (Tr. 60). Finally, the ALJ noted that Dotson's activities of daily living also were inconsistent with her allegations of symptom and limitation severity. (Tr. 60).

At step four, the ALJ found that Dotson was unable to perform any past relevant work. (Tr. 60). Considering Dotson's age, education, work experience, and RFC, the ALJ concluded

4

that there were jobs in the national economy that she could perform, including mail sorter (20,000 jobs nationally) and inspector (25,000 jobs nationally). (Tr. 61). The ALJ found that Dotson had not been under a disability, as defined in the Social Security Act, from August 1, 2013, through the date of this decision, February 12, 2016. (Tr. 62).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

Dotson has requested that the court reverse the ALJ's decision and award benefits, or in the alternative remand the matter for additional proceedings. In her appeal, Dotson has argued that the ALJ: (1) made a mistake of fact in concluding that Dotson attended the administrative hearing in person; (2) erred in evaluating the medical opinion of Christopher Hutcheson, LSW, and Dr. Cathy Streifel, Ph.D.; (3) erred in evaluating Dotson's mental residual functional capacity; and (4) erred in evaluating Dotson's subjective allegations in accordance with SSR 96-7p and SSR 16-3p.

First, Dotson has argued that the ALJ made a mistake of fact in concluding that Dotson appeared in person at the administrative hearing. Dotson testified at the hearing via telephone. The Commissioner does not dispute that fact. Dotson's contention is that the ALJ's decision included observations that the ALJ was incapable of making considering that Dotson testified over the phone. In evaluating Dotson's subjective complaints, the ALJ found that Dotson's "demeanor at the hearing contradicted her allegations of pain and symptom severity because she appeared comfortable throughout the hearing and sat without overt pain signs. Moreover, the claimant interacted appropriately and responded to the questions with adequate memory, concentration and attention." (Tr. 60). Therefore, in light of the ALJ's mistake of fact as well as other errors in evaluating her subjective allegations, Dotson has argued that the ALJ's evaluation of her symptoms was patently wrong.

This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. **Bates v. Colvin**, 736 F.3d 1093, 1098 (7th Cir. 2013); **Schmidt v. Astrue**, 496 F.3d 833, 843 (7th Cir. 2007); **Prochaska v. Barnhart**, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."). The ALJ must make

explicit findings and explain them "in a way that affords meaningful review," or the ALJ's credibility determination is not entitled to deference. **Steele v. Barnhart**, 290 F.3d 936, 942 (7th Cir. 2002). Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." **Clifford v. Apfel**, 227 F.3d 863, 872 (7th Cir. 2000); *see* **Bates**, 736 F.3d at 1098.

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. § 404.1529(a); Arnold v. Barnhart**, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); **Scheck v. Barnhart**, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. § 404.1529(c);** *see Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005) ("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

8

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not disregard an individual's statements about symptoms solely based on objective medical evidence. SSR 16-3p, at *5[1]; *see Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014) ("'[T]he ALJ cannot reject a claimant's testimony about limitations on her daily activities solely by stating that such testimony is unsupported by the medical evidence.'") (quoting *Indoranto*, 374 F.3d at 474); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted).

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994); *see Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, she must make more than "a single, conclusory

---

[1] The Social Security Administration updated its guidance about evaluating a claimant's symptoms. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). SSR 16-3p superseded SSR 96-7p and removed the term "credibility" from the Administration's policies. SSR 16-3p at *1. The new policy clarifies that an ALJ should not examine a claimant's character similar to an adversarial proceeding when evaluating the claimant's subjective symptoms. SSR 16-3p at *1. Although SSR 16-3p post-dates the ALJ hearing in this case, a regulation that clarifies rather than changes existing law is appropriate on appeal. *Pope v. Shalala*, 998 F.2d 473, 482–83 (7th Cir. 1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999). Because SSR 16-3p clarifies the Administration's policies, this court will evaluate the ALJ's findings under the Administration's new guidance. *See Roper v. Colvin*, 2016 WL 3940035, at *3 (N.D. Ill. July 21, 2016) (finding it appropriate to consider the new regulation on appeal).

9

statement . . . The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, at *9; *see* **Minnick v. Colvin**, 775 F.3d 929, 937 (7th Cir. 2015) ("[A] failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal.") (citations omitted); **Zurawski**, 245 F.3d at 887; **Diaz v. Chater**, 55 F.3d 300, 307–08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, her analysis of the evidence). The ALJ is required to build an accurate and logical bridge from the evidence to her conclusion. **Zurawski**, 245 F.3d at 887 (quoting **Clifford v. Apfel**, 227 F.3d 863, 872 (7th Cir. 2000)). A minor discrepancy, coupled with the ALJ's observations is sufficient to support a finding that the claimant was incredible. **Bates**, 736 F.3d at 1098. However, this must be weighed against the ALJ's duty to build the record and not to ignore a line of evidence that suggests a disability. **Bates**, 736 F.3d at 1099.

The ALJ determined that Dotson's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible with the evidence as a whole, including the medical evidence and her noted activities of daily living, and did not support the allegations. (Tr. 59). In support of her credibility determination, the ALJ indicated that given the degree of pain and limitation alleged by Dotson the record reflected conservative treatment. (Tr. 60). The ALJ indicated that Dotson testified that she only had pain 40% of the day and that she took Tylenol for the pain. (Tr. 60). Moreover, Dotson testified that she had three panic attacks per week and that she took Klonopin when she felt the beginning of a panic attack. (Tr. 60). However, the ALJ noted that contrary to Dotson's testimony, she indicated that she had not

10

taken Klonopin in a week. (Tr. 60). The ALJ properly accounted for the dosage and effectiveness of the medications that Dotson took to alleviate her pain and for her panic attacks.

Moreover, the ALJ also supported her credibility finding by noting Dotson's testimony that she worked five hours per week cleaning banks. (Tr. 60). The ALJ concluded that this testimony demonstrated that Dotson was capable of more than she alleged and that her symptoms were not as debilitating as she alleged. (Tr. 60). The ALJ also explained how Dotson's activities of daily living were inconsistent with her allegations of symptom and limitation severity. The ALJ found that Dotson's testimony and her function reports from September of 2013 and June of 2013 were inconsistent with her alleged limitations. (Tr. 60). The ALJ discredited Dotson's testimony that she had extreme issues with social interactions because she had worked as a massage therapist. (Tr. 60). The ALJ has made more than a single conclusory statement in support of her credibility finding.

However, the ALJ erred when she relied on Dotson conservative treatment without seeking the reasoning for her conservative treatment. *See* **Craft v. Astrue**, 539 F.3d 668, 679 (7th Cir. 2008) (holding that an ALJ cannot draw a negative inference from a lack of treatment without exploring the claimant's reason for the lack of medical care). An ALJ also cannot draw a negative inference based on a claimant's failure to obtain *adequate* treatment, even if she has sought some treatment during the relevant time period. *See* **Visinaiz v. Berryhill**, 243 F. Supp. 3d 1008, 1014 (N.D. Ind. 2017) (remanding where "the ALJ did not ask Plaintiff about her perceived failure to seek adequate treatment" when the Plaintiff's only treatment was through medication that provided "some benefit"); **Parker v. Colvin**, No. 2:15-CV-316, 2016 WL 4435622, at * 5 (N.D. Ind. Aug. 22, 2016) (remanding where "[t]he ALJ found Plaintiff less than credible in part because she did not attend as many physical therapy appointments as authorized

by her insurance and was not participating in pain management or the types of pain medication the ALJ thought would be appropriate" without "ask[ing] Plaintiff about her physical therapy appointments or pain medication regime[n], and did not credit the pain medications Plaintiff did take"). In the instant matter, the ALJ's decision did not indicate any treatment that was prescribe that Dotson did not undergo. Moreover, the ALJ did not explain how Dotson's "conservative treatment" undermined her allegations of pain. The ALJ must provide sufficient details as to allow the court to trace the path of the ALJ's reasoning. ***Diaz v. Chater***, 55 F.3d 300, 307 (7th Cir. 1995); ***Green v. Shalala***, 51 F.3d 96, 101 (7th Cir. 1995).

The ALJ found that Dotson's demeanor at the hearing contradicted her allegations of pain and symptom severity. (Tr. 60). However, the ALJ relied on observations that she was unable to make. The Commissioner has argued that although some of the observations in the ALJ's decision were visual in nature the purported error was harmless. An ALJ's error is harmless where, having looked at the evidence in the record, the court "can predict with great confidence what the result on remand will be." ***McKinzey v. Astrue***, 641 F.3d 884, 892 (7th Cir. 2011). The Commissioner acknowledged that the ALJ's repeated reference to Dotson appearing comfortable during the hearing was erroneous. However, the Commissioner contends that the ALJ has provided other well-supported reasons for discounting Dotson's subjective complaints. Therefore, the error should not be grounds for remand.

The court finds that the ALJ's assessment of Dotson's credibility was patently wrong. The ALJ relied on unsupported evidence when she concluded that Dotson was not entirely credible. There is no dispute that the ALJ based her credibility finding on erroneous observations when she discounted the severity of Dotson's pain and symptoms. Moreover, the ALJ improperly relied on Dotson's conservative treatment without seeking the reasoning for her

12

treatment or providing some explanation for that finding. Accordingly, the ALJ's decision is not consistent with and supported by substantial evidence. On remand, the ALJ should reevaluate Dotson's subjective symptoms in accordance with SSR 16-3p.

Next, Dotson has argued that the ALJ erred in evaluating the medical opinion of Christopher Hutcheson, LSW, and Dr. Cathy Streifel, Ph.D. A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(d)(2)**; *see Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013); ***Punzio v. Astrue***, 630 F.3d 704, 710 (7th Cir. 2011); ***Schmidt v. Astrue***, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must minimally articulate her reasons for crediting or rejecting evidence of disability. ***Clifford v. Apfel***, 227 F.3d 863, 870 (7th Cir. 2000) (quoting ***Scivally v. Sullivan***, 966 F.2d 1070, 1076 (7th Cir. 1992)); *see* **20 C.F.R. § 404.1527(d)(2)** ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

"[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider." ***Bates***, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. ***Schmidt***, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of

13

disability."); *see, e.g.*, ***Latkowski v. Barnhart***, 93 Fed. App'x 963, 970-71 (7th Cir. 2004); ***Jacoby v. Barnhart***, 93 Fed. App'x 939, 942 (7th Cir. 2004).  If the ALJ was unable to discern the basis for the treating physician's determination, the ALJ must solicit additional information. ***Moore v. Colvin***, 743 F.3d 1118, 1127 (7th Cir. 2014) (citing ***Similia v. Astrue***, 573 F.3d 503, 514 (7th Cir. 2009)).  Ultimately, the weight accorded a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician may also "bend over backwards to assist a patient in obtaining benefits . . . [and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are."  ***Hofslien v. Barnhart***, 439 F.3d 375, 377 (7th Cir. 2006) (internal citations omitted); *see* ***Punzio***, 630 F.3d at 713.

The ALJ noted that Hutcheson had completed a mental residual functional capacity assessment in August of 2015.  (Tr. 58).  Hutcheson concluded from the assessment that Dotson was markedly limited in activities of daily living, social functioning, and maintaining concentration, persistence, or pace.  (Tr. 58).  The ALJ gave the assessment partial weight because although the assessment was co-signed by Dr. Cathy Streifel, Ph.D., the evaluation was completed by Hutcheson, a non-acceptable medical source.  (Tr. 58).  However, opinions from non-acceptable medical sources are weighed using the same factors as medical sources, but not every factor will apply because the evaluation of such opinion varies case by case.  **20 C.F.R. § 404.1527(f).**  These factors are set forth in **20 C.F.R. § 404.1527(c)(1)-(5)** and include:  1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) supportability; 4) consistency with the record as a whole; and 5) whether the treating physician was a specialist in the relevant area.  An ALJ need not explicitly

mention every factor, so long as her decision shows that she "was aware of and considered many of the factors." ***Schreiber v. Colvin***, 519 Fed.Appx. 951, 959 (7th Cir. 2013).

The ALJ indicated that Hutcheson and Dr. Streifel's assessed limitations were inconsistent with Dotson's ability to perform her work as a home health aide. (Tr. 58). The ALJ also cited inconsistencies in Hutcheson's findings with his treatment records. For example, the ALJ's decision indicated that according to Hutcheson's May 5, 2015, treatment record Dotson was employed, enjoyed time with family, and had an interest in massage therapy. (Tr. 58). Also, the October 2015 examination report indicated that Dotson was alert and fully oriented with intact memory, intact judgment and insight, intact associations, logical and goal-oriented thought processes, and that she was able to maintain attention and focus throughout the session. (Tr. 58).

The ALJ provided some discussion of the factors set forth in 20 C.F.R. § 404.1527(c) to support the weight assigned to Hutcheson and Dr. Streifel's opinion. The ALJ is not required to discuss every piece of evidence or every factor. However, the ALJ did not acknowledge the length and nature and extent of Hutcheson's relationship with Dotson in support of or against her decision. The court is not concluding that the ALJ erred in evaluating the medical opinion of Hutcheson and Dr. Streifel. However, since this matter is being remanded on a different issue, the ALJ should reconsider the weight given to Hutcheson and Dr. Streifel's opinion.

Finally, Dotson has argued that the ALJ erred in evaluating her mental residual functional capacity. SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, she cannot ignore evidence that undermines her ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

The ALJ's RFC assessment and the hypothetical posed to the VE must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)); *Indoranto v. Barnhart*, 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the

claimant's limitations supported by medical evidence in the record."). That includes any deficiencies the claimant has in concentration, persistence, or pace. *Yurt*, 758 F.3d at 857; *O'Connor-Spinner*, 627 F.3d at 619 ("Among the limitations the VE must consider are deficiencies of concentration, persistence and pace."); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (indicating the hypothetical question "must account for documented limitations of 'concentration, persistence, or pace'") (collecting cases). The most effective way to ensure that the VE is fully apprised of the claimant's limitations is to include them directly in the hypothetical. *O'Connor-Spinner*, 627 F.3d at 619.

Courts repeatedly have held terms like "simple, repetitive tasks" alone do not exclude from the VE's consideration those positions that present significant problems with concentration, persistence, or pace. *Stewart*, 561 F.3d at 684–85 (finding hypothetical limited to simple, routine tasks did not account for limitations of concentration, persistence, or pace); *see also Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015). Similarly, hypotheticals limiting the claimant to minimal social interaction with coworkers, supervisors, or the general public failed to account for difficulties in maintaining concentration, persistence, and pace. *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009); *see also Varga,* 794 F.3d at 814.

The ALJ found that Dotson suffered from medically determinable severe mental impairments of posttraumatic stress disorder and bipolar disorder. (Tr. 54). The ALJ concluded that Dotson had moderate restrictions in concentration, persistence, or pace. (Tr. 55). In assessing Dotson's mental residual functional capacity, the ALJ limited Dotson to "simple, routine, and repetitive tasks not at production rate pace; occasional conduct [sic] with coworkers and supervisors; no tandem tasks and no work with the public; simple work decisions; only occasional changes in the work setting." (Tr. 57).

Dotson has argued that the RFC failed to account for her moderate restrictions in concentration, persistence, or pace. She contends that the ALJ only accounted for the level of complexity of tasks that she could perform, not her ability to perform work tasks that were consistent with the expectations of competitive employment. Moreover, Dotson has argued that the ALJ failed to explain how her limitation to simple, routine, and repetitive tasks not at production rate pace would accommodate her moderate limitations in concentration, persistence, or pace. Finally, Dotson has argued that that ALJ only considered the frequency of her contact with her coworkers and supervisors rather than the quality of those interactions as well. The Commissioner presented a brief statement that "the Seventh Circuit has affirmed ALJ decisions with far fewer limits in the vocational expert's hypothetical question." Therefore, the Commissioner has not explained what evidence supported the ALJ's decision.

The Seventh Circuit has been very clear that a limitation to simple instructions or simple, routine tasks does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace. The court finds that the ALJ did not support her finding nor explain how she assessed Dotson's mental RFC. An ALJ is always obligated to address how she reached an RFC assessment by discussing some reasoning behind the RFC and the evidence that supports it. SSR 96-8p stresses that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." As SSR 96-8p explains, findings concerning a claimant's limitations in the functional areas of activities of daily living, social functioning, and concentration are not the same as an RFC. An ALJ cannot merely lift her findings from these functional areas and include them in the RFC without explaining her reasoning. ***Arnett v. Astrue***, 676 F.3d 586, 592 (7th Cir. 2012). On remand, the ALJ should

offer a narrative discussion describing how the evidence in the record supports the ALJ's findings concerning Dotson's mental residual functional capacity.

Dotson has requested that the court remand for an award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." ***Allord v. Astrue***, 631 F.3d 411, 415 (7th Cir. 2011). The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits. ***Briscoe v. Barnhart***, 425 F.3d 345, 355 (7th Cir. 2005). The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 5th day of September, 2018.

/s/ Andrew P. Rodovich
United States Magistrate Judge